U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 30 P 1:04

CLERK
BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| CHRISTOPHER R. MARCHESE-SANTOS, Plaintiff, | ) | |
| v. | ) | Case No. 2:26-cv-00059 |
| LADUKE, Correctional Officer at Northwest State Correctional Facility, | ) | |
| v. | ) | Case No. 2:26-cv-00060 |
| FARR, Correctional Officer at Northwest State Correctional Facility, Defendants. | ) | |

**OPINION AND ORDER**
**DECLINING TO ADOPT MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING REVISED APPLICATIONS TO PROCEED IN FORMA PAUPERIS, ADOPTING RECOMMENDATION TO CONSOLIDATE CASES, DISMISSING COMPLAINTS, DENYING AS MOOT PLAINTIFF'S MOTIONS TO SUBPOENA MATERIAL AND FOR ORAL ARGUMENT, AND GRANTING IN PART LEAVE TO AMEND**
(Docs. 4, 5, 6, & 7)

## I. Procedural Background.

On March 6, 2026, self-represented Plaintiff Christopher R. Marchese-Santos initiated two actions against Northwest State Correctional Facility ("NWSCF") Correctional Officers ("CO") Laduke in Case No. 2:26-cv-00059 and Farr in Case No. 2:26-cv-00060 and filed applications for leave to proceed *in forma pauperis* ("IFP"). In a May 14, 2026 Order, the Magistrate Judge denied Plaintiff's initial IFP applications because Plaintiff did not include a certified copy of his trust fund account statement describing the contents of his Inmate Account for the prior six months. *See* 28 U.S.C. § 1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of

the complaint[,] obtained from the appropriate official of each prison at which the prisoner is or was confined."). The Magistrate Judge granted Plaintiff thirty days to refile his completed IFP applications.

In addition to denying the initial IFP applications, the Magistrate Judge reviewed the proposed Complaints and determined they "appear to concern the same conversation or series of conversations involving COs Laduke and Farr[,]" who purportedly "improperly 'locked in' Plaintiff." (Doc. 3 at 4.) Because Plaintiff "is the sole plaintiff in both cases," the Magistrate Judge concluded that "consolidation [would] not prejudice Plaintiff and [would] further avoid unnecessary litigation, preserve judicial economy, and allow for the efficient resolution of the cases." *Id.*

On June 29, 2026, the Magistrate Judge issued a Report and Recommendation ("R & R") (Doc. 4) in which he recommended that the court dismiss the Complaints without prejudice because Plaintiff failed to file revised IFP applications by June 15, 2026. Later the same day, Plaintiff filed revised IFP applications in which he "declare[d] under penalty of perjury" that he executed the revised IFP applications on June 13, 2026. (Doc. 5-1 at 3, Doc. 6-1 at 3.) The certificates of the authorized officer at NWSCF indicate they were signed by an officer on June 22, 2026. Plaintiff attached to both of his applications a "Debit Account" statement which indicates that there is "[n]o data available" with respect to his financial "[t]ransactions for the last 90 days[.]" *Id.* at 4 (emphasis omitted). The Debit Account also states that its balance is $0.00.

On August 4, 2026, Plaintiff filed objections to the R & R in which he claimed his June 29, 2026 revised IFP applications were timely under the prison mailbox rule. (Doc. 7.) He requested leave to amend the case, for the court to issue subpoenas "of all video[s] or document[s and] witness[s]es of [the] case[,]" and for the court to set the matter for oral argument. *Id.* at 1. He noted his revised IFP applications were docketed the same day as the R & R and argued that he does not have control over mail delivery through NWSCF. He attached another copy of his June 29, 2026 "Debit Account" and a "Resident Account Summary" showing transactions from September 1, 2025, through

March 17, 2026, and totaling his "Receivable Aggregate" during that time of $4.73. (Doc. 7-1 at 1-2.)

## II. The Allegations of the Complaints.

Plaintiff alleges CO Laduke violated his First Amendment rights to "[r]eligion [and e]xpression," committed torture and hate crimes, and imposed "[c]o[m]munication [d]epr[i]vation[.]" (Case No. 2:26-cv-00059, Doc. 1-1 at 3.) According to Plaintiff, CO Laduke called him "the Mexican [i]l[le]gal[,]" and he allegedly overheard a conversation between Defendants in which CO Laduke said that he "hates Spanish [p]eople[.]" *Id.* at 4. Plaintiff further asserts that CO Laduke said Defendants should "[a]gitate [and] provoke" Plaintiff because he has "violent charges" and is a mental health patient. *Id.* CO Laduke purportedly confiscated Plaintiff's pens to thwart his efforts to represent himself. Plaintiff claims that when he attempted to file a grievance about the alleged incident, Defendants "[l]ocked [him] in" for having a conversation with other inmates. *Id.* He seeks $3,000,000 in damages "to be [paid] in property or in [the] form" of cash from CO Laduke for sixteen violations of his constitutional rights. *Id.*

In Case No. 2:26-cv-00060, Plaintiff alleges CO Farr stated that Plaintiff is a Mexican "[i]m[m]igrant" and not an American. (Doc. 1-1 at 4.) Plaintiff contends that CO Farr called him a "violent offender" and sought to provoke Plaintiff to attack so that CO Farr could obtain $150,000 from the Vermont Department of Corrections ("DOC") for a workplace injury. *Id.* Plaintiff alleges that "[t]his is [o]ngoing [e]very week[,]" because Defendants work together every day, and they target a different NWSCF inmate every day. *Id.* He seeks $3,000,000 in damages "to be [paid] in property or in [the] form" of cash from CO Farr for sixteen alleged violations of his constitutional rights.

## III. Legal Conclusions and Analysis.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord Cullen*,

194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

**A. Whether Plaintiff's Revised IFP Applications were Timely.**

Under the prison mailbox rule, certain legal documents submitted by self-represented incarcerated plaintiffs "are deemed filed on the date plaintiff delivers them to prison officials to be transmitted to the court, not on the date they are received." *Hickman v. Bellevue Hosp. Ctr.*, 2024 WL 2112127, at *6 (E.D.N.Y. Jan. 5, 2024) (citing *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993); *Houston v. Lack*, 487 U.S. 266, 270 (1988)). "This is because, unlike other litigants, 'the *pro se* prisoner has no choice but to entrust the forwarding' of legal documents 'to prison authorities whom he cannot control or supervise and who may have every incentive to delay.'" *Id.* (quoting *Houston*, 487 U.S. at 271).

Plaintiff's revised IFP applications indicate that he delivered them to prison officials on June 13, 2026, two days before the deadline of June 15, 2026. Pursuant to the prison mailbox rule, his revised IFP applications were timely filed. For this reason, the court DECLINES TO ADOPT the Magistrate Judge's recommendation of dismissal based on failure to timely file (Doc. 4) and GRANTS Plaintiff's revised IFP applications (Docs. 5 & 6).

**B. 28 U.S.C. § 1915(e)(2)(B) Review.**

Under the IFP statute, the court is required to conduct an initial screening of the Complaints. The court must dismiss them if it determines that the actions are "frivolous or malicious[,]" fail to state a claim on which relief can be granted or seek monetary relief "against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Although the court must read a self-represented plaintiff's complaint liberally and construe it to raise the strongest arguments it suggests, *Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam), "[d]ismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In determining whether a complaint states a claim, the court must "accept as true all of the allegations contained in a complaint" and decide whether the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a) (listing required contents of a pleading that states a claim for relief). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Self-represented litigants must satisfy the plausibility standard set forth in *Iqbal*. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80-81 (2d Cir. 2020). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Construing the Complaints liberally, as the court is required to do, Plaintiff appears to bring claims for violations of his First Amendment rights to free speech and freedom of religion, his right to Equal Protection under the Fourteenth Amendment, and his Eighth Amendment right to be free from excessive use of force. Under 42 U.S.C. § 1983, a claimant may bring suit against "[e]very person who, under color of any statute . . . of any State[,] . . . subjects, or causes to be subjected, . . . [any] person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. The statute is "not itself a source of substantive rights" but, rather, provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted). As a result, § 1983 occupies a position of "primacy" in providing a "basis for securing redress for constitutional violations[.]" *Pauk v. Bd. of Trs. of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (internal quotation marks omitted). "The Supreme Court has explained that the purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed

rights and to provide relief to victims if such deterrence fails." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (brackets and internal quotation marks omitted). For this reason, "constitutional torts are only actionable against state actors or private parties acting under the color of state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (internal quotation marks omitted).

### C. Whether the Court has Jurisdiction Over Plaintiff's Claims Against Defendants in Their Official Capacities.

Plaintiff seeks monetary damages in the amount of $3,000,000 from each Defendant. Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment thus "bars a damages action against a State in federal court[]" unless a state has expressly and unequivocally waived its immunity or Congress has abrogated the state's immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (explaining the "state acquiescence" and "congressional abrogation" exceptions).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity "has no bearing on whether a plaintiff may sue the state for the same relief in the state's own courts." *Beaulieu v. Vermont*, 807 F.3d 478, 485 (2d Cir. 2015). "Even when a state may be sued in its own courts for a money judgment, the Eleventh Amendment protects it from a liability imposed by a federal

court." *Id.*

In this action, which Plaintiff brought in federal court, Vermont has not waived its immunity. *See* 12 V.S.A. § 5601(g) ("Nothing in this chapter waives the rights of the State under the Eleventh Amendment of the U.S. Constitution."). As a result, the Eleventh Amendment bars his claims for monetary damages against Defendants in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."). For this reason, Plaintiff's claims for monetary damages against Defendants in their official capacities must be DISMISSED.

To the extent Plaintiff seeks damages from Defendants in the form of property for his pens, "[c]laims for loss of property are not cognizable under section 1983." *Wood v. Colon*, 2015 WL 5842429, at *3 (D. Conn. Oct. 6, 2015). The Supreme Court has found that the Due Process Clause is not violated where a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 536 (1984) (holding "that, even if [a correctional officer] intentionally destroyed [the inmate's] personal property during the challenged shakedown search, the destruction did not violate the Fourteenth Amendment since the [state] has provided respondent an adequate postdeprivation remedy.").

In Vermont, DOC Directive 321.01 governs "the handling of offender property[,]" and it includes a "Report of Lost or Damaged Property" form which an inmate may submit when the inmate claims personal property has been lost or destroyed due to actions of the DOC. *See* Vermont Dep't of Corrs., REPORT OF LOST OR DAMAGED

PROPERTY.[1] Pursuant to DOC Directive 321.01, the inmate must complete and submit the Report of Lost or Damaged Property form, after which the DOC will investigate and respond within fifteen business days of the inmate's request for an investigation. DOC Directive 321.01 authorizes the facility to replace the item or reimburse the inmate if the claim is substantiated and instructs the investigator to provide a basis for a denial if the inmate's claim is denied. If the inmate disagrees with the resolution of the investigation, the inmate may file suit in the Vermont Small Claims Court.

Because Vermont provides a remedy for an inmate's post-deprivation damages, Plaintiff's claim for damages in the form of property must also be DISMISSED.

**D. Plaintiff's Claims Against Defendants in Their Individual Capacities.**

Plaintiff also appears to assert claims against Defendants in their individual capacities. *See* Case No. 2:26-cv-00059, Doc. 1-1 at 1 (listing "own capacity liability" and "one capacity liability action[]s") (capitalization omitted); Case No. 2:26-cv-00060, Doc. 1-1 at 1 (including "one capacity liability" on Complaint) (capitalization omitted).

**1. Whether Plaintiff Plausibly Alleges a Claim for Violations of his First Amendment Right to Free Speech.**

Although he does not specify the precise nature of his claims, the court construes Plaintiff's Complaints as asserting First Amendment retaliation claims based on his allegation that Defendants "[l]ocked [him] in for a conversation wit[h] other [i]nma[tes]" when he attempted to file a grievance about the confiscation of his pens. (Case 2:26-cv-00059, Doc. 1-1 at 4.) To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)) (internal quotation marks omitted).

---

[1] *Available at* https://outside.vermont.gov/dept/DOC/Policies/Report%20of%20Lost%20or%20Damaged%20Property%20Form.pdf (last visited Aug. 26, 2026).

"The filing of prison grievances is a constitutionally protected activity." *Mitchell v. Chappius*, 750 F. Supp. 3d 123, 143 (W.D.N.Y. 2024) (quoting *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003)) (internal quotation marks and brackets omitted). "[A]uthority in this Circuit is split as to whether an inmate's expression of an intent to file a grievance is protected by the First Amendment." *Pitt v. Cnty. of Rockland*, 2024 WL 691145, at *8 (S.D.N.Y. Feb. 20, 2024).

Regarding the second element, the Second Circuit defines an "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill*, 389 F.3d at 381 (internal quotation marks and emphasis omitted). "To determine whether or not alleged retaliatory acts are *de minimis*, the court must tailor its inquiry to the specific context in which the alleged acts took place, [such as] a state prison." *Salahuddin v. Mead*, 2002 WL 1968329, at *4 (S.D.N.Y. Aug. 26, 2002).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his [or her] motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

"The Second Circuit has cautioned that retaliation claims by prisoners are prone to abuse as virtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Id.* at 731 (internal quotation marks and brackets omitted). "A complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

Although a close call, Plaintiff's retaliation claim fails to sufficiently allege facts supporting a retaliation claim in part because Plaintiff has not alleged that the confiscation of his pens and locking him in his cell would "deter a similarly situated

individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (internal quotation marks and ellipses omitted). "Although confiscation or destruction of an inmate's property may constitute an adverse action for purposes of a retaliation claim, that is not always the case." *Quezada v. Fischer*, 2016 WL 11478236, at *17 (N.D.N.Y. Feb. 16, 2016) (finding that "putting [p]laintiff's sheet, lotion, and shampoo in the garbage is not in and enough itself sufficient to constitute an adverse action"); *see also McFadden v. Friedman*, 2015 WL 5603433, at *12 (N.D.N.Y. Sept. 23, 2015) (concluding confiscation of plaintiff's fan would "not deter a similarly situated individual of ordinary firmness from exercising his constitutional rights," and is "not substantial enough to deter legitimate grievances against prison officers") (citations, brackets, and internal quotation marks omitted).

Regarding the causal connection between the protected activity and the alleged retaliatory conduct, Plaintiff does not "provide details as to how much time elapsed between [P]laintiff's [attempted] filing of the grievance . . . and [Defendants'] actions[.]" *Salgado NYS Dep't of Corr. & Cmty. Supervision*, 2016 WL 6311296, at *8 (W.D.N.Y. Sept. 15, 2016). In the context of a correctional facility, it is insufficient to allege that being locked in a cell is retaliation without additional context regarding the duration of the lockdown and how soon after his grievance discussions that Defendants confined him. *See Flood v. Cappelli*, 2019 WL 3778736, at *8 (S.D.N.Y. Aug. 12, 2019) (concluding court was "prevent[ed] . . . from inferring retaliation based on temporal proximity alone" where plaintiff did not "allege the dates during which he was confined to his cell or how soon after he filed his grievance his confinement took place[]"). Because the allegations in the Complaints are vague and conclusory, Plaintiff's retaliation claims must be DISMISSED.

### 2. Whether Plaintiff Plausibly Alleges a Claim for Violations of his First Amendment Right to the Free Exercise of Religion.

"The Supreme Court has explained that inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (internal quotation marks

omitted) (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987)). "In the prison context, alleged violations of the right to free exercise are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (internal quotation marks omitted). Accordingly, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) ("A prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests.") (internal quotation marks omitted).

Here, the Complaints lack any allegations regarding Plaintiff's religious beliefs or practices. *See Shapiro v. Cmty. First Servs., Inc.*, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that plaintiff's claim is based upon a sincerely held religious belief.") (internal quotation marks and ellipses omitted). Nor does Plaintiff allege that Defendants' actions infringed upon his right to the free exercise of his religion. *Compare Kravitz*, 87 F.4th at 115 (alleging "officers violated his First Amendment right to the free exercise of religion by preventing him from observing the Jewish holiday of Shavuot on two consecutive evenings[]"). In the absence of these factual allegations, Plaintiff fails to plausibly state a claim for which relief may be granted, and the court DISMISSES his First Amendment free exercise claims.

### 3. Whether Plaintiff Plausibly Alleges an Equal Protection Claim.

The Equal Protection clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To the extent Plaintiff's Complaints can be construed to assert equal protection claims based on his religion or his nationality, a plaintiff generally must allege either "purposeful discrimination . . . directed at an identifiable or suspect class[,]" *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995), or that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in

treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

"Membership in a particular religious faith will generally satisfy the protected-class requirement." *Barnes v. Fedele*, 760 F. Supp. 2d 296, 301 (W.D.N.Y. 2011) (citing *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)). A plaintiff can allege intentional discrimination on the basis of race in several ways, "including by identifying a law or policy that expressly classifies persons on the basis of race, a facially neutral law or policy that has been applied in an intentionally discriminatory manner, or a facially neutral statute or policy that has an adverse effect and is motivated by discriminatory animus." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006) (citing *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001))

Plaintiff does not allege that Defendants treated similarly situated inmates of different religious faiths more favorably than him, or that he was singled out for discriminatory treatment based on his religion. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014) ("Because Plaintiffs do not allege that Defendants deliberately treated Muslim inmates differently from any similarly-situated inmates who adhere to religions, Plaintiffs fail to state a claim against Defendants under the Equal Protection Clause with respect to the provision of religious materials[.]"); *Barnes*, 760 F. Supp. 2d at 301 ("There are no facts alleged here, however, that support a claim that plaintiff was treated differently on account of his religion; nothing in the complaint suggests that any similarly situated inmates of a different faith were treated more favorably than plaintiff, or that plaintiff was singled out for discriminatory treatment on account of his religion.").

Similarly, although Plaintiff alleges that Defendants made derogatory comments about his nationality, he does not allege that they treated him differently than inmates who were not Mexican or Spanish speaking. *Compare LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991) (concluding inmate sufficiently alleged elements of an Equal

Protection claim where he alleged "that similarly-situated white inmates were given work assignments without having to complete any 90-day [training] program, while [inmate], who is [B]lack, had the additional obstacles placed in his way"); *Randle v. Alexander*, 960 F. Supp. 2d 457, 476 (S.D.N.Y. 2013) (concluding African-American inmate sufficiently alleged an Equal Protection claim where he asserted that guards gave white inmates preferential cell locations and forced African-American inmates to fight each other). To the contrary, Plaintiff alleges that Defendants target a different NWSCF inmate every day, an allegation that is not based on religion or nationality but, rather, status as an inmate at NWSCF. *See* Case No. 2:26-cv-00060, Doc. 1-1 at 4. Because his Equal Protection claims fail to plausibly allege sufficient facts to state claims for which relief may be granted, Fed. R. Civ. P. 12(b)(6), they are DISMISSED.

**4. Whether Plaintiff Plausibly Alleges an Eighth Amendment Excessive Force Claim.**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments[.]" U.S. Const. amend. VIII. An inmate asserting an Eighth Amendment excessive force claim must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (internal quotation marks omitted). "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (internal quotation marks omitted); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ("A *de minimis* use of force will rarely suffice to state a constitutional claim."). However, "the malicious use of force to cause harm[]" constitutes a *per se* Eighth Amendment violation because in such circumstances "contemporary standards of decency always are violated." *Blyden*, 186 F.3d at 263 (internal quotation marks omitted).

"It is well established in the Second Circuit that verbal harassment of inmates by prison officials, unaccompanied by any injury—no matter how inappropriate, unprofessional, or reprehensible it might seem—does not rise to the level of a violation of

the Eighth Amendment." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 490 (N.D.N.Y. 2009); *see also Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 500 (S.D.N.Y. 2014) ("'[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.'"). In other words, "allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim." *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)). In general, the alleged injury must be physical in nature, although, "under certain circumstances, a prison official's infliction of *psychological* pain on an inmate may constitute an Eighth Amendment violation . . . [if] the psychological pain [is] (1) intentionally inflicted and (2) more than *de minimis* in nature." *Cusamano*, 604 F. Supp. 2d at 491 (emphasis in original).

"For suits challenging conditions of confinement, the caselaw requires extreme deprivation, such as the denial of the minimal civilized measure of life's necessities." *King v. Virts*, 826 F. Supp. 3d 480, 494 (W.D.N.Y. 2026) (quoting *Walker v. Schult*, 45 F.4th 598, 620 (2d Cir. 2022) (internal quotation marks omitted). "Courts in this Circuit have held that as a general rule, administrative segregation conditions, even though restrictive and harsh, are insufficient to establish Eighth Amendment violations because they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation marks and ellipses omitted). The Second Circuit has generally recognized that "whether incarceration in [solitary confinement] violates the Eighth Amendment . . . depends on the duration *and* conditions of the confinement." *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015) (emphasis added).

Even when construed with leniency, Plaintiff's Complaints do not allege facts that plausibly suggest that Defendants' conduct violated the Eighth Amendment. Plaintiff does not allege that being "locked . . . in" caused him any physical injury (Case No. 2:26-cv-59, Doc. 1-1 at 4), or that Defendants' alleged verbal harassment caused a psychological injury that was more than *de minimis* in nature. Nor does he allege that

Defendants held him in solitary confinement for an extended period of time and in conditions that violated the Eighth Amendment. Without more, Plaintiff's Eighth Amendment claims must be DISMISSED.

**LEAVE TO AMEND**

The Second Circuit has cautioned that "[a] *pro se* complaint should not be dismissed without the [c]ourt granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Amendment is futile where there is a substantive problem with a cause of action that cannot be cured by better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Leave to amend would be futile with respect to Plaintiff's claims for monetary damages against Defendants in their official capacities, which are barred by Eleventh Amendment immunity. Better pleading will not cure this deficiency.

It is not evident that leave to amend would be futile as to the remaining claims, however. Plaintiff is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaints. *See Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (noting "it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (brackets and internal quotation marks omitted). An Amended Complaint must include Plaintiff's factual allegations in their entirety and must set forth the claims he alleges against each defendant and the relief he seeks in numbered paragraphs. For further reference, Plaintiff may consult a

sample Complaint as well as the court's Representing Yourself as a *Pro Se* Litigant Guide, available on the court's website at www.vtd.uscourts.gov/filing-without-attorney-1. Plaintiff must file his Amended Complaint by October 30, 2026, or this case will be dismissed.

**CONCLUSION**

For the foregoing reasons, the court DECLINES TO ADOPT the Magistrate Judge's R & R (Doc. 4) and GRANTS Plaintiff's revised IFP applications (Docs. 5 & 6). The court ADOPTS the R & R's recommendation to consolidate cases. Because Plaintiff fails to plausibly allege claims for which relief may be granted, the court DISMISSES his Complaints, and his requests for a subpoena and for oral argument are DENIED AS MOOT (Doc. 7). The court GRANTS IN PART leave to file an Amended Complaint consistent with this Opinion and Order by October 30, 2026.

Pursuant to 28 U.S.C. § 1915(a)(3), the court DENIES Plaintiff a certificate of appealability in this matter because Plaintiff has failed to make a substantial showing of the denial of a constitutional right.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 30th day of September, 2026.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court